# In the United States District Court
## for the Southern District of Georgia
## Brunswick Division

TOMMY JACKSON,                          *
                                        *
    Plaintiff,                      *
                                        *
vs.                                     *          CV 212-035
                                        *
CITY OF HAZLEHURST,                     *
                                        *
    Defendant.                      *


### ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendant City of Hazlehurst (the "City"). See Dkt. No. 11. For the reasons stated below, Defendant's Motion is **GRANTED**.

### BACKGROUND

This is an employment discrimination suit. Plaintiff Tommy Jackson, a 54 year-old African-American male, is employed by the City of Hazlehurst ("the City") in the Water & Light Department ("Water Department"). Dkt. No. 1.

The facts underlying this action appear to be largely undisputed. In his Response to the City's Summary Judgment Motion, Plaintiff did not respond to the City's Statement of

AO 72A
(Rev. 8/82)

Undisputed Fact.   He did list several facts of his own and cited his Deposition.   Dkt. No. 18.   None of the facts listed by Plaintiff actually disputes the statements contained in the City's Statement of Undisputed Facts.   See Dkt. No. 18.

Plaintiff has worked for the City's Water Department for eight years.   See Dkt. No. 11, Ex. 1, ¶ 6.   Currently there are seven employees in the Water Department, three of which are African-American: Zeon Adams, Turf White, and Plaintiff.   Dkt. No. 11, Ex. 1, ¶ 18.   Much of Plaintiff's discriminatory allegations involve the City Clerk, Ethelyn Creech.   Although she was not Plaintiff's supervisor, Ethelyn Creech interacts with Plaintiff and the other Water Department employees in performing her official duties.   See Dkt. No. 11, Ex. 1, ¶¶ 4, 19 -22.

In 2005, shortly after Plaintiff began working for the Water Department, he was suspended for three days without pay because Plaintiff forgot to turn someone's water off.   Dkt. No. 28, 47:1-25.   Plaintiff does not dispute that he failed to perform a task assigned to him, but states that he believes he was punished more harshly because of his race.   Dkt.28, 47:1-25. He believes this to be the case because the Caucasian employee who was Plaintiff's predecessor was never disciplined or suspended.   Dkt.28, 47:1-25.

AO 72A
(Rev. 8/82)

Plaintiff testified that he was threatened with termination because he purchased a $5.00 spark plug. Dkt. No. 28, 35:9-17. Creech explained that she and Plaintiff's supervisor were critical of Plaintiff's purchase because Plaintiff paid "someone $5.00 to install a $3.95 spark plug instead of installing it himself." Dkt. No. 11, Ex. 1, 29.

Plaintiff also contends that Creech tried to have him fired by giving the City Auditor paperwork showing that Plaintiff had been misusing the City's gas tank for personal use. Dkt. No. 11, Ex. 1, ¶ 24. An investigation was launched concerning the misuse of the City's gas tank and both Plaintiff and his supervisor, a Caucasian employee, were audited and required to fill out audit forms. Dkt. No. 28, 44:1-10. Plaintiff testified that he felt he was singled out among the African-American employees for an audit. Dkt. No. 28, 45:1-16. Plaintiff feels that more African-American employees and more Caucasian employees should have been audited as well. Dkt. No. 28, 45:1-16.

In a meeting following the gas audit, Plaintiff contends he was fired "for a few minutes." Dkt. No. 11, Ex. 1, ¶¶ 44-49. By the end of that same meeting though, Plaintiff still had his job, and no termination paperwork was ever completed. Dkt. No. 11, Ex. 1, ¶ 47. Plaintiff did not lose any pay or benefits as a result of this brief termination. Dkt. No. 11, Ex. 1, ¶ 48.

AO 72A
(Rev. 8/82)

According to Plaintiff, the City has a policy requiring African-American employees to work for six years before they earn an additional week of vacation time, whereas Caucasian employees receive that additional week of vacation time after completing only five years.  Dkt. No. 11, Ex. 1, ¶ 50.  Thus, a Caucasian employee in his fifth year of work at the City would have two weeks of vacation time whereas a fifth-year African-American employee would only have one week of vacation. Plaintiff received two weeks of vacation time in his sixth year working for the City.  Dkt. No. 11, Ex. 1, ¶ 50.  Plaintiff identified two City employees who received two weeks of vacation time in their fifth year—White, an African-American employee, and Chris Barnard, a Caucasian employee in another department. Dkt. No. 11, Ex. 1, ¶¶ 50-51.  Plaintiff contends White only received the extra week after five years because he had "a big argument on that subject."  Dkt. No. 11, Ex. 1, ¶ 52.

Plaintiff also feels he has been discriminated against in his pay.  When asked about his fellow employee's salary, Plaintiff identified a fellow African-American employee who earned "a whole lot more" than Plaintiff and explained that employee had worked for the City longer.  Dkt. No. 28, 19:18. Plaintiff could not identify any Caucasian employee in the Water Department that earned more than him, nor did he identify a non-African-American employee outside of the Water Department who

AO 72A
(Rev. 8/82)

earned more for performing similar job duties.  Dkt. No. 11, Ex. 1, ¶¶ 60-74.

Creech has, on three occasions, deducted an hour from Plaintiff's paycheck for lunch hours that Plaintiff did not take.  Dkt. No. 11, Ex. 1, ¶ 40.  Other members of the Water Department, including Caucasian employees, have also had time deducted by Creech for lunch breaks they supposedly did not take.  Dkt. No. 11, Ex. 1, ¶ 41.  Plaintiff conceded in his deposition that his complaint regarding the lunch break deductions has nothing to do with his race; it is just a complaint about his department.  Dkt. No. 28, 33:5-14.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 29, 2011 alleging violations of Title VII of the Civil Rights Act of 1964.  See Dkt. No. 1.  Following the filing of Plaintiff's EEOC charge, Plaintiff alleges the City retaliated against him in two ways. Dkt. No. 28, 58:1-16.

Post-EEOC charge, $89.00 was deducted from Plaintiff's paychecks on two occasions for uniform cleanings.  See Dkt. No. 11, Ex. 1, ¶ 83.  Another Caucasian employee also incurred these same deductions.  Dkt. No. 11, Ex. 1, ¶ 83.  The deductions were overcharges due to the uniform company's mistake and, once the mistake was discovered, the Mayor reimbursed Plaintiff with a

AO 72A
(Rev. 8/82)

personal check for the improper deductions.  Dkt. No. 11, Ex. 1, ¶¶ 86-87.

Also post-EEOC charge, Creech began "stalking" Plaintiff and the other members of the Water Department.  Plaintiff stated that Creech started stalking him and other employees "after the new Mayor came in."  Dkt. No. 28, 35:18-21. Creech began "[c]oming by, check[ing], looking, [and] seeing where [Plaintiff and his co-workers] was [sic.] every day.  Dkt. No. 28, 35:23-25.  On one occasion, Creech "[e]ven called the police on [Plaintiff's] car because [his] car was parked by the side of the fence."  Dkt. No. 28, 35:24-25.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The court must view the evidence and draw all inferences in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986).  To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.  The burden then shifts to

AO 72A
(Rev. 8/82)

the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

DISCUSSION

**I. Age Discrimination Claim**

Summary judgment is clearly appropriate for Plaintiff's age discrimination claim. First, in Plaintiff's EEOC charge, he only checked the boxes for "race" and "retaliation." See Dkt. No. 1. The box for discrimination based on age was not checked. See Dkt. No. 1. "[A] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Gregory v. Dep't of Human Res., 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotations omitted). An allegation that is "like or related to, or grew out of" the allegations contained in the EEOC charge are not barred. Id.

Here, however, Plaintiff did not mention age discrimination or include any facts relating to age discrimination in his EEOC charge. Therefore, Plaintiff has not administratively exhausted his age discrimination claim under Title VII's requirements. 42 U.S.C. § 20003e-5.

Additionally, Plaintiff is unable to establish a prima facie case of age discrimination. In his deposition, although he stated that he had a "feeling" that his claims of

7

discrimination were related to his age, Plaintiff failed to
identify any younger employee who Plaintiff felt was treated
differently than him because of his or her age.  See Dkt. No.
28, 27:12-25, 28:1-5.  The following excerpt from Plaintiff's
deposition demonstrates the absence of any evidence establishing
an age discrimination claim.

> Q: Has age got anything to do with it?  In your mind,
> does age have anything . . . to do with it?
> A: Uh, I feel like to does.
> Q: What makes you feel like that?
> A: Well, I mean, I just—I don't know.  I just—it is
> just a feeling, you know.
> Q: Well, do you know of somebody younger than you that
> has been treated differently than you and you think it
> is because they are younger?
> A: No.  I feel it is because of their color.
> Q: Okay.  Now how about Barnard, [another employee,]
> how old is he?
> A: Younger.
> Q: About what age, do you know?
> A: He has got to be in his forties.
> Q: But you believe that [he is] getting better
> treatment than you [] because of his race?
> A: Yes.
> Q: Not his age?
> A: Not his age.
> Q: Can you think of anybody here you would, you know,
> that you would say is younger than you and you think
> it is because of their youth or their young, being
> young, that have gotten some advantage that you
> haven't got?
> A: Not at the moment.

Dkt. No. 28, 26:12-25, 27:1-15.  Plaintiff cannot survive
summary judgment on his age discrimination claim on the basis of
a vague, unsubstantiated "feeling."

AO 72A
(Rev. 8/82)

## II. Race Discrimination Claim

Plaintiff cannot survive summary judgment on his race discrimination claim either.  The City advanced several reasons why summary judgment is appropriate.  One of these reasons is that the City contends many of Plaintiff's allegations are barred by the applicable statute of limitations because Plaintiff failed to file an EEOC charge within 180 days of the allegedly discriminatory events.  See Dkt. No. 11, Ex. 2. Plaintiff did not address this argument in responding to the City's summary judgment motion.  The Court concludes, for the reasons set forth below, that Plaintiff's race discrimination claim fails on the merits, rendering it unnecessary to evaluate whether Plaintiff's claims are timely.

Plaintiff neglected to identify the type of race discrimination claim he is pursuing, however, it is clear from the Complaint that Plaintiff is not pursuing an adverse impact claim, but is alleging some type of intentional discrimination.

"To establish a prima facie case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) []he is a member of a protected class; (2) []he was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than []he was treated; and (4) []he was qualified to do the job."  Burke-Fowler v. Orange Cnty., Fla., 447 F.3d

9

1319, 1323 (11th Cir. 2006). "If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action." Id. "Defendant's burden of production in rebutting the *prima facie* case is exceedingly light." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (citations omitted). If the defendant meets this "exceedingly light" burden, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." Burke-Fowler., 447 F.3d at 1323.

Plaintiff claims that he was (1) suspended for three days without pay, (2) threatened with termination for buying a spark plug, (3) had three hours deducted from his paychecks for lunch hours he did not take, (4) investigated and audited for stealing gas, (5) fired for a few minutes because of the gas-stealing allegations, (6) had $89 deducted from his paycheck twice because of erroneous billings for uniform cleanings, (7) paid less than other employees, and (8) "stalked" by Creech.

Whether or not Plaintiff could satisfy the other elements of his prima facie case, Plaintiff has failed to identify similarly situated employees outside of his protected class were treated more favorably. The vast majority of the incidents Plaintiff complains of affected African-American and Caucasian employees alike.

AO 72A
(Rev. 8/82)

"To be an adequate comparator, the preferentially treated individual outside the plaintiff's protected class has to be similarly situated to the plaintiff in all relevant respects." Smith v. Lockhead-Martin Corp., 644 F.3d 1321, 1326 n.17 (11th Cir. 2011). A "comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

Here, the City did not treat non-African-American employees more favorably as evidenced by the fact that Plaintiff, in his deposition, stated that his Caucasian co-workers endured similar treatment. Plaintiff admitted that Creech deducted pay for lunch hours from both Caucasian employees and African-American employees alike. Dkt. No. 28, 33:1-13 (Plaintiff admitting that the deductions for lunch hours "[did]n't have to do with [his] race," but rather "ha[d] to do with [his] department."). Likewise, the City improperly deducted amounts for uniform cleanings from a Caucasian employee's paycheck in addition to Plaintiff's. See Dkt. No. 28, 61:1-10 (another Caucasian employee was "docked" $89.00 for improper uniform cleaning charges that were eventually reimbursed).

Plaintiff's Caucasian supervisor was audited and investigated regarding improper gas charges just like Plaintiff. Tellingly, Plaintiff in his deposition complained that more

AO 72A
(Rev. 8/82)

African-American employees should have been audited as well. Dkt. No. 28, 45:1-25. Plaintiff felt singled out in general and believed other employees, both "white and black," should have been audited as well. Dkt. No. 28, 45:25.

With regards to the three-day suspension, Plaintiff contends that he was punished more harshly because of his race. In his deposition, Plaintiff testified that he felt that the three-day suspension was on the basis of his race "[b]ecuase the other white guy that had th[e] job before [Plaintiff]" was never disciplined or in trouble. Dkt. No. 28, 47:14-25. "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [courts] evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" Burke-Fowler, 447 F.3d at 1323 (citing Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999)). Plaintiff admitted that he does not know about his Caucasian predecessor's job conduct. There is simply no evidence in the record demonstrating that Plaintiff's predecessor was ever "involved in or accused of the same or similar conduct." Burke-Fowler, 447 F.3d at 1323.

Plaintiff has also failed to identify an appropriate comparator for his discriminatory pay allegations. Plaintiff's deposition testimony reveals that there are no Caucasian employees in the Water Department that earn more than Plaintiff.

See Dkt. No. 28, 19:25, 20:1-5.   Indeed, there is an African-American Water Department employee who, by virtue of being at the Water Department longer, earns "a whole lot more than [Plaintiff]."  Dkt. No. 28, 19:18.  Plaintiff has failed to identify a higher-paid employee outside of Plaintiff's protected class that has been employed by the City for a similar amount of time and performs similar job duties.

Plaintiff has also failed to identify a similarly situated coworker for his discriminatory vacation-time claim.  Plaintiff contends that African-American employees had to work for the City for six years before they received two weeks of vacation time per year, whereas Caucasian employees only had to work five years prior to receiving two weeks of vacation time.  Plaintiff worked six years before he was allotted two weeks of vacation time.  Plaintiff testified that two City employee's received two weeks of vacation time after working only five years: Turf White, an African-American Water Department employee, and Chris Barnard, a Caucasian employee in another department.  Plaintiff contends that White only received the extra week of vacation in his fifth year because he complained to his supervisor.  See Dkt. No. 28, 24:23-25.

Barnard, the Caucasian employee Plaintiff identified, cannot serve as a proper comparator because he worked in a different department.  Plaintiff bears the burden of

establishing that Barnard was similarly situated and has failed to present evidence that Barnard began working for the City around the same time as Plaintiff or that Barnard was subject to the same general vacation policies as Plaintiff. See Silvera v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) ("In order to meet the comparability requirement a plaintiff is required to show that he is similarly situated in all relevant aspects to the non-minority employee."); Hossain v. Steadman, 855 F. Supp. 2d 1307, 1314 (S.D. Ala. 2012) (co-workers from different academic departments were not similarly situated).

The record also demonstrates that Creech's "stalking" was not specific to Plaintiff, nor was it specific to the African-American employees. Dkt. No. 28, 35:18-21. After the new Mayor was elected, Creech closely monitored all Water Department employees.

"If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff has failed to present any other evidence of discrimination and therefore summary judgment is warranted.

Even if Plaintiff was able to establish a prima facie case, Plaintiff's claim cannot survive summary judgment because, he

AO 72A
(Rev. 8/82)

has failed to rebut the legitimate non-discriminatory reasons the City has offered for almost all of its actions.

The City offers Plaintiff's admitted failure to do assigned duties as the reason for suspending Plaintiff without pay for three days.  See Dkt. No. 11.  Plaintiff clearly admits that he failed to turn off the water at someone's residence and has not argued this proffered justification was pretextual.  See Dkt. No. 28, 47:1-15.

For the spark plug incident, Creech stated that she and Plaintiff's supervisor criticized Plaintiff for "paying someone $5.00 to install a $3.95 spark plug instead of installing it himself."  Dkt. No. 11, Ex. 1, 29.  That would constitute a legitimate non-discriminatory reason for the employer's actions. Plaintiff has not suggested this asserted justification was pretextual, thus Plaintiff has failed to support this claim under the burden-shifting framework.

Even according to Plaintiff, the reason he was audited and investigated for the gas incident was because it appeared via the computer system that Plaintiff was buying all the gas because of a mix-up with the keys.  Dkt. No. 28, 39:1-16.

Creech testified that the two $89 uniform deductions were a mistake.  That is a legitimate non-discriminatory reason, which is in fact strongly supported by other evidence.  Plaintiff testified that another Caucasian employee also had the same

AO 72A
(Rev. 8/82)

improper deductions. Dkt. No. 28, 59:8-17. Shortly after the mistake was realized, the Mayor wrote Plaintiff a personal check to fully reimburse Plaintiff. See Dkt. No. 59:10-25.

The City contends that the reason that Plaintiff's pay rate differs than some other employees is because pay is determined by the length of time an employee has worked at the City and by the employee's department and job duties. Dkt. No. 11, Ex. 1, ¶¶ 57-74. The fact that Plaintiff receives more pay than some Caucasian employees and less pay than other African-American employees strongly supports the City's contention. See Dkt. No. 11, Ex. 1, ¶ 65; Dkt. No. 28, 19:18 .

Plaintiff has not suggested any of the proffered reasons are pretextual or identified any evidence casting doubt on the legitimacy of those reasons. In sum, for multiple reasons, summary judgment on Plaintiff's race discrimination claim is appropriate.

## III. Retaliation Claim

Plaintiff asserts that the City retaliated against him for filing an EEOC complaint. Plaintiff filed an EEOC charge against the City on August 29, 2011. Plaintiff has identified two actions taken after his EEOC charge that he contends were retaliatory—the two improper $89 uniform deductions and Creech's "stalking."

AO 72A
(Rev. 8/82)

A plaintiff establishes a prima facie case of retaliation by showing that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action.  Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010).

There is no doubt that Plaintiff has satisfied the first element.  Filing a discrimination charge with the EEOC is unquestionably statutorily protected expression.  Berman v. Orkin Exterminating Co., 160 F.3d 697, 702 (11th Cir. 1998) (filing EEOC complaint is protected conduct).

The standard for determining what constitutes an adverse employment action differs for a discrimination claim versus a retaliation claim.  See Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 68.  Here, a reasonable employee would probably be dissuaded from making a charge of discrimination if the result would be that his employer would begin closely monitoring the employee's actions, and on one occasion, call the police based on where the employee was parked.

However, Plaintiff's retaliation claim cannot survive summary judgment because Plaintiff has failed to establish a

17

causal connection between the filing of his EEOC complaint and the improper deductions and stalking. "The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely related." Pennington, 261 F.3d at 1266 (citing Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998)). Plaintiff cannot meet this admittedly low threshold.

One way to establish a causal connection is to show close temporal proximity between the statutorily-protected conduct and the allegedly retaliatory actions. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Here, the EEOC charge was filed August 29, 2011 but the dates of the uniform cleaning charges and the "stalking" are not clear from the record.

Not only has Plaintiff failed to identify for the Court the amount of time between the protected activity and the allegedly retaliatory conduct, but the Plaintiff has also neglected to advance another other basis for finding a causal connection. In fact, the record strongly suggest the absence of a causal connection given that other employees who did not engage in statutorily protected activity also encountered identical issues as Plaintiff.

AO 72A
(Rev. 8/82)

Another Caucasian employee who did not file any EEOC complaint also had the same improper uniform deductions. And, Creech began "stalking" not just Plaintiff, but the other employees of the Water Department who had not filed EEOC complaints as well. Even Plaintiff attributes a different cause to the "stalking." In his deposition, Plaintiff said "[a]nd she starts stalking us after—the new Mayor came in." Dkt. No. 28, 35:18-19. Plaintiff's deposition indicates that he attributes the new Mayor's arrival as the event precipitating the "stalking," not his EEOC complaint.

Accordingly, summary judgment on Plaintiff's retaliation claim is appropriate.

## IV. Intentional Infliction of Emotional Distress Claim

The City is entitled to sovereign immunity on state law claims unless Plaintiff can prove the City waived its immunity. See O.C.G.A. § 36-33-1; CSX Transp., Inc. v. City of Garden City, 588 S.E.2d 688, 688-89 (Ga. 2003). "Sovereign immunity is not an affirmative defense that the governmental defendants must establish." Scott v. City of Valdosta, 634 S.E.2d 472, 476 (Ga. Ct. App. 2006). "Instead, it is a privilege, subject to waiver by the State, and which the party seeking to benefit from the waiver must show." Id. Plaintiff, by failing to make any arguments on this point, did not meet this burden. Accordingly,

AO 72A
(Rev. 8/82)

the Court grants summary judgment as to Plaintiff's state law claims.

### CONCLUSION

Based on the foregoing, Defendant City of Hazlehurst's Motion for Summary Judgment, Dkt. No. 11, is **GRANTED**.  The clerk of court is directed to enter the appropriate judgment and close the case.

**SO ORDERED**, this 25th day of July, 2013.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)

20